UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CLAYTON R. THOMAS and PERSONALIZED HEALTHCARE SOLUTION, LLC,<br><br>Defendants. | Civil Action File No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1. Between February and June 2019, Defendant Clayton R. Thomas ("Thomas"), through his wholly-owned entity, Personalized Healthcare Solution, LLC ("Personalized Healthcare"), fraudulently raised $730,000 from one investor through the sale of seventeen promissory notes.

2. Thomas told the investor that its funds would be used to purchase certain medical devices called the TM-Flow System ("Medical Devices").

3. These Medical Devices were to be placed in certain third-party medical offices, generating investment returns through patient usage.

4. Thomas, however, made numerous misrepresentations to the investor, including overstating both the projected monthly returns from the Medical Devices as well as the cost to purchase each Medical Device.

5. Thomas misappropriated certain investor funds for his personal use by pocketing the difference between his actual cost of the Medical Device and the amount he told the investor it cost.

6. The investor lost substantially all of its original investments as a result of Thomas's misconduct.

## VIOLATIONS

7. The Defendants engaged in and, unless restrained and enjoined by this Court, will continue to engage in acts, practices, schemes, and courses of business that constituted and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], as well as Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

8. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].

10. In connection with the transactions, acts, practices, and courses of business described in this Complaint, Defendants, directly and indirectly, have made use of the mails, and/or the means and instruments of transportation or communication in interstate commerce.

11. Venue is proper because certain of the transactions, acts, practices, and courses of business constituting violations of federal securities laws occurred in the Middle District of Tennessee, Thomas resides in the District and resided in this District at the time of the events

alleged herein, and Personalized Healthcare had its principal place of business in this District at the time of the events alleged herein.

## THE DEFENDANTS

12. **Clayton R. Thomas**, age 46, lives in Brentwood, Tennessee. He was the sole owner and manager of Personalized Healthcare. Thomas has never held any securities licenses.

13. **Personalized Healthcare Solution, LLC**, was formed in 2018 by Thomas. Its principal place of business was Brentwood, Tennessee. Thomas promoted the company as a "medical and wellness driven distribution and management company." Personalized Healthcare was administratively dissolved by the state of Tennessee in August 2022 and all of its known bank accounts have been closed. It has never registered a securities offering with the Commission.

## THE DEFENDANTS' OFFERING FRAUD SCHEME

**A. Thomas's Sale of Securities to Fund the Purchase and Placement of Medical Devices**

14. From February 2019 and continuing through June 2019, Thomas, through Personalized Healthcare, sold seventeen promissory notes for a total of $730,000 to a limited liability company investor.

15. Thomas marketed the promissory notes as investments.

16. Thomas created a packet of documents called the Personalized Healthcare Solutions Investor Outline that he intended to use to locate other investors.

17. Despite his efforts, Thomas was not successful in locating investors other than the limited liability company investor.

18. The limited liability company investor was an investment vehicle for an individual investor.

19. Thomas told the investor that he would use the investment funds to purchase and place a medical device called the TM-Flow System.

20. The Medical Device was developed and produced by an unrelated third-party entity.

21. The Medical Device collects multiple biometric readings such as blood pressure, pulse, and other cardio-vascular functions, and then purportedly uses that information to draw conclusions about the individual's overall health and wellness.

22. Thomas hired individuals who acted as contractors for Personalized Healthcare.

23. Those contractors would identify medical offices willing to try the Medical Device for no upfront costs.

24. Personalized Healthcare paid approximately $95,000 to contractors to place the Medical Devices purchased with the investor's funds in medical offices.

25. When a medical office indicated it was willing to try the Medical Device, it would sign a contract with Personalized Healthcare.

26. Pursuant to a typical contract, the medical office would pay no upfront costs for the Medical Device.

27. Instead, each medical office agreed to pay Personalized Healthcare a set amount per patient use of the Medical Device.

28. The typical set amount agreed to by the medical office was generally about $200 for each use of the Medical Device to obtain biometric information about a patient.

29. Between February and June 2019, Thomas sold the investor seventeen promissory notes for $730,000.

30. Typically, Thomas would approach the investor and sell a new promissory note each time a contractor found a new medical office to place a Medical Device.

31. The terms of the notes were five years with a minimum annual interest rate of approximately 11.5%.

32. Thomas told the investor, both orally and through written documentation, that he would use the proceeds of the promissory notes to purchase new Medical Devices directly from the manufacturer.

33. The promissory notes included the name of the specific medical office and the serial identification number for the Medical Device.

34. Thomas verbally represented to the investor that the Medical Devices cost $50,000.

35. Thomas also provided the investor with written documentation stating that the Medical Devices cost $50,000.

36. Thomas told the investor that the Medical Devices would generate a steady return and provided pro forma results based on his supposed experience with marketing this type of device.

37. Thomas also told the investor that it would receive 15-20% of the fees Personalized Healthcare collected for each Medical Device placed, with a guaranteed minimum monthly payment of $1,100 per device.

38. Thomas told the investor that Thomas would receive any excess fees that Personalized Healthcare received as compensation.

**B. Thomas's Fraudulent Misconduct Regarding the Investments**

39. Thomas misrepresented or omitted multiple material facts in connection with the sale of the promissory notes to the investor.

40. For example, Thomas overstated expected investment returns to the investor, having little to no basis for the projected returns and failing to include past negative results.

41. Thomas had no basis for his representation to the investor that the Medical Devices would generate a guaranteed minimum monthly return of $1,100.

42. In fact, Thomas knew that the investment would likely be far less profitable than what he told the investor it would be because he had prior experience with a previous investor in which the Medical Devices produced little to no return.

43. Thomas never told the investor that Medical Devices purchased with the previous investor's funds only a few months prior produced little to no return.

44. Thomas also overstated the actual price of the Medical Devices bought with investment funds and kept the additional funds for his personal use.

45. In January 2019, Thomas told the investor that the price per Medical Device unit was $50,000.

46. Thomas later provided conflicting documents regarding the cost of the Medical Devices.

47. One document provided to the investor stated that the price per Medical Device was $50,000.

48. Another document provided to the investor stated that the Medical Devices only cost $25,000, but that the support, including hiring contractors to place the devices, was an additional $25,000.

49. Actual invoices for the purchase of the Medical Devices, however, show that Thomas's verbal and written representations to the investor about the price of the Medical Devices were false and misleading.

50. For example, invoices show that Thomas bought four Medical Devices in January and February 2019 for an average price of $12,550.

51. Thomas retained the difference between what he paid for the Medical Devices and the undisclosed mark-up he charged the investor.

52. Thomas knew both the actual cost of the Medical Devices and the prior returns produced by placing those Medical Devices in medical offices.

53. By misrepresenting both the cost of the Medical Devices and the expected levels of success of the investment, Thomas knowingly misled the investor and caused the investor to lose substantially all of its investment with Personalized Healthcare.

54. The investor invested a total of $730,000.

55. Over the course of its investment, the investor received payments from Thomas totaling approximately $116,000.

56. By late 2019, Thomas stopped making any payments on the promissory notes with the investor.

57. The investor's total losses were $614,000.

58. Thomas has retained possession of all the Medical Devices purchased with the investor's funds.

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77(q)(a)(1)]

59. Paragraphs 1 through 58 are hereby re-alleged and incorporated herein by reference.

60. Between February and June 2019, the Defendants, in the offer and sale of securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes, and artifices to defraud purchasers of such securities, all as more particularly described above.

61. While engaging in the course of conduct described above, the Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud, or with a severely reckless disregard for the truth.

62. By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and (a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and (a)(3)]

63. The Commission re-alleges paragraphs 1 through 58 above.

64. Between February and June 2019, the Defendants, in the offer and sale of securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

   a. obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   b. engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

65. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and (a)(3)].

# COUNT III

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

66. The Commission re-alleges paragraphs 1 through 58 above.

67. Between February and June 2019, the Defendants, in connection with the purchase or sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:

   a. employed devices, schemes, and artifices to defraud;

   b. made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   c. engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

68. The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes, and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices, and courses of business.

69. By reason of the foregoing, Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully prays for:

**I.**

Permanent injunctions enjoining Defendants Thomas and Personalized Healthcare and their officers, agents, servants, employees, and attorneys from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

An order requiring disgorgement by Defendant Thomas of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws.

**III.**

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] imposing civil penalties against Defendant Thomas.

**IV.**

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

**JURY TRIAL DEMAND**

The Commission hereby demands a trial by jury as needed to determine the liability of each Defendant.

Respectfully submitted this 9th day of May, 2023,

*/s/ Kristin W. Murnahan*
M. Graham Loomis
Regional Trial Counsel
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, GA 30326

404-842-7622
Georgia Bar No. 457868
loomism@sec.gov

Kristin W. Murnahan
Senior Trial Counsel
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, GA 30326
404-842-7655
Georgia Bar No. 759054
murnahank@sec.gov

COUNSEL FOR PLAINTIFF